IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSE DENKINS, CHERYL SHELTON, EMMA WARING, and MAXINE CAMPBELL, | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil No. 1:16-CV-00653 (JBS/AMD) |
| v. | |
| STATE OPERATED SCHOOL DISTRICT OF THE CITY OF CAMDEN, PAYMON ROUHANIFARD, ANGELA GILBERT, JOHN DOE and JANE DOE 1-10 | **OPINION** |
| Defendants. | |

APPEARANCES:

Andrew L. Schwartz
Robert Martin Schwartz
SCHWARTZ LAW GROUP LLC
12 Centre Drive
Monroe Township, NJ 08831
    Attorneys for the Plaintiffs

Richard L. Goldstein
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
Woodland Falls Corporate Park
200 Lake Drive East
Suite 200
Cherry Hill, NJ 08002
    Attorney for Defendant State Operated School District of
    the City of Camden

Damien H. Weinstein
David N. Cohen
FISHKIN LUCKS LLP
One Riverfront Plaza
Suite 350
Newark, NJ 07102
    Attorneys for Defendant Paymon Rouhanifard

Michelle Lynn Weckerly
SALMON RICCHEZZA SINGER TURCHI, LLP
123 Egg Harbor Road
Suite 406
Sewell, NJ 08080
    Attorney for Defendant Angela Gilbert

**SIMANDLE**, Chief Judge:

**I. INTRODUCTION**

    Plaintiffs Jesse Denkins, Cheryl Shelton, Emma Waring, and Maxine Campbell (collectively referred to as "Plaintiffs") filed this lawsuit on February 5, 2016 [Docket Item 1] pursuant to 42 U.S.C. § 1983, common law tort claims, and Title 18A of the New Jersey Statutes. Plaintiffs bring claims against the State Operated School District of the City of Camden ("Defendant District"), State District Superintendent Paymon Rouhanifard ("Defendant Rouhanifard"), District employee Angela Gilbert ("Defendant Gilbert"), and John and Jane Does 1—10 (collectively referred to as "Defendants").

    Presently before the Court is each Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), filed April 25, 2016 [Docket Items 12, 13, 14.] Defendant Rouhanifard's and Defendant District's Motions to Dismiss aver that this Court lacks subject matter jurisdiction based on an extension of the State's Eleventh Amendment sovereign immunity. These Defendants also aver that Plaintiffs have failed to state a cognizable § 1983 claim. Defendant Gilbert's Motion asserts

she is protected from suit under the qualified immunity doctrine because Plaintiffs did not suffer a constitutional deprivation, and her actions were objectively reasonable. The motions are decided without oral argument pursuant to Fed. R. Civ. P. 78.

For the reasons set forth herein, the Court will grant Defendant District's and Defendant Rouhanifard's Motions to Dismiss based on the parties' sovereign immunity under the Eleventh Amendment. As such, the Court no longer enjoys subject matter jurisdiction over these Defendants and will thereby also dismiss the remaining common law and state law claims for lack of jurisdiction. The Court will also grant Defendant Gilbert's Motion to Dismiss because she enjoys qualified immunity. The Court will exercise its discretion to also dismiss the remaining common law and state law claims against Defendant Gilbert.

## II. BACKGROUND

The Court will examine the facts as alleged by Plaintiffs. Plaintiffs allege that Defendant District, Defendant Rouhanifard, and Defendant Gilbert fraudulently induced their retirement or resignation by misrepresenting the fact that Defendant Gilbert did not hold a provisional Administrator license to conduct performance evaluations of Plaintiffs. According to Plaintiffs, Defendant Gilbert's negative evaluations constructively forced their resignations or retirements because it led to actual or impending tenure charges

3

by Defendant District and Defendant Rouhanifard. Plaintiffs
argue their "involuntary" resignations deprived them of their
due process right to continued employment because it was based
on an allegedly material misrepresentation that Defendant
Gilbert held the appropriate Administrator certification or
comparable license to conduct such evaluations. (Pl. Opp. Br.
1.) Accordingly, Plaintiffs allege, Defendants deprived them of
their statutorily created property interest in continued tenured
employment without due process of law in violation of 42 U.S.C.
§ 1983.

On June 25, 2013 the State of New Jersey assumed control of
Camden City School District making it a state operated school
district. (Cl. ¶ 13.) Prior to the assumption of State control,
but in anticipation of it, the Defendant District adopted an
evaluation instrument, which was approved by the New Jersey
State Department of Education to be utilized in evaluating the
Defendant District's principals and vice principals. (Cl. ¶ 14.)
Upon the completion of the 2013-14 school term, principals and
vice principals who received three evaluations whose average
cumulative rating resulted in a less than "effective" score were
subject to tenure charges of inefficiency. (Cl. ¶ 17.)

During the 2013-14 school term, Defendant District advised
its principals and vice principals that their performance would
be assessed by three evaluators, and that anyone receiving a

4

cumulative overall rating less than "satisfactory" would be the subject of "tenure charges of inefficiency" and potential employment dismissal. (Cl. ¶¶ 30-31.) An employee subject to tenure charges may lose his/her educational certificates and may experience a negative impact on his/her ability to collect pension benefits. (Cl. ¶ 32.)

The Defendant District hired School Leader Trainers and Evaluators to conduct the evaluations, advertising the position as requiring, among other requirements, a valid school administrator license in the State of New Jersey. (Cl. ¶ 18.) Pursuant to the now repealed statute, N.J.A.C. 6A:9-6.4(c), the School Leader Trainer and Evaluator position was required to possess a valid New Jersey School Administrator certificate or endorsement. (Cl. ¶¶ 26, 34, 35.) Robert Fisicaro, the Lead Evaluator in the 2013-14 school term for the Defendant District was in charge of vetting applicants for the evaluator positions. (Cl. ¶¶ 19-20.)

   a. *Defendant Gilbert Hired as School Leader Trainer and Evaluator*

Defendant Gilbert was offered the position of School Leader Trainer and Evaluator for the Defendant District for the 2013-14 on or about September 25, 2013 by Katherine Wieland, the Acting Director of Human Resources. (Cl. ¶¶ 21, 22, 24.) The offer of employment was "contingent" upon the approval of Defendant

5

Rouhanifard and a successful completion of background clearance,
which allegedly included the requirement that she possess
appropriate New Jersey certificates and licenses. (Cl. ¶ 23.)
After her acceptance of employment but prior to her actual hire
date on October 23, 2013, Defendant Gilbert provided Defendant
District with information that she did not possess a valid New
Jersey Administrator certificate or endorsement. (Cl. ¶¶ 25,
27.) At no time during her employment with Defendant District
did Defendant Gilbert obtain such certificates or endorsements.
(Cl. ¶ 28.) Plaintiffs aver that evaluations conducted by an
evaluator without the requisite certifications are invalid and
void. (Cl. ¶ 37.)

   b. *Plaintiffs' Tenure Charges of Inefficiency*

   **Plaintiff Denkins**

   Defendant Gilbert observed Plaintiff Denkins on May 21,
2014 (Cl. ¶ 45) and gave him an average score of 2.00, denoting
"partially effective." (Cl. ¶ 46.) The Defendant District filed
tenure charges of inefficiency against Plaintiff Denkins on July
30, 2014, signed by Defendant Rouhanifard, based on three
evaluations that deemed his performance to be less than
effective; including one evaluation from Defendant Gilbert. (Cl.
¶ 47.) Plaintiff Denkins subsequently resigned from employment
with the Defendant District, allegedly because of the attendant

risks to his pension benefits and educational certificates. (Cl. ¶ 48.)

### Plaintiff Shelton

Defendant Gilbert observed Plaintiff Shelton on December 11, 2013 and April 11, 2014, giving her scores of "partially effective" on both evaluations (Cl. ¶¶ 57-59.) The Defendant District filed tenure charges on July 31, 2014 based on three evaluations deeming Shelton's performance less than effective, one of which was Defendant Gilbert's evaluation. Plaintiff Shelton subsequently resigned from employment with the Defendant District, allegedly because of the attendant risks to her pension benefits and educational certificates. (Cl. ¶ 61.)

### Plaintiff Waring

Defendant Gilbert evaluated Plaintiff Waring on June 13, 2014 giving her an average score of 2.36, "partially effective." (Cl. ¶ 71.) The Defendant District presented Waring with her annual performance report on June 27, 2014, showing she had an annual cumulative average score of 2.35, which was considered "less than effective." (Cl. ¶ 72.) The Defendant District subsequently advised Plaintiff Waring that the District would seek tenure charges of inefficiency. (Cl. ¶ 73.) Plaintiff Waring resigned from her employment before such charges were ever brought. (Cl. ¶ 74.)

**Plaintiff Campbell**

Defendant Gilbert observed Plaintiff Campbell on December 10, 2013 and gave her an average score of 1.76, meaning "partially effective." (Cl. ¶¶ 83-84.) Plaintiff Campbell subsequently resigned allegedly believing that the Defendant District intended to pursue tenure charges of inefficiency against her. (Cl. ¶ 85.)

c. *Defendant Gilbert Lacks Provisional Administrator Certificate*

The Plaintiffs did not learn that Defendant Gilbert lacked a provisional Administrator certificate until after they had resigned from the Defendant District. (Cl. ¶ 98.) On February 6, 2015, Defendant Gilbert falsely testified in a contested tenure matter that she had received her provisional school administrator certificate "probably in the fall of 2013." State Operated Sch. Dist. of the City of Camden v. Ed Brown, Agency Dkt.: 290-9/14. (Cl. ¶ 100.) When asked to present the information regarding her education certificates, Defendant Gilbert said she did not have it with her. (Cl. ¶ 101.) Defendant Gilbert allegedly refused to cooperate when asked to access her certificates online from the Division of Licensure and Credentials of the New Jersey Department of Education. (Cl. ¶ 102.)

### III. STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of

the elements of a cause of action will not do." Id. at 678. "If
the well-pleaded facts do not permit the court to infer more
than the mere possibility of misconduct, the complaint has
alleged – but it has not shown – that the pleader is entitled to
relief." Id. at 679 (internal quotation marks and citation
omitted).

A party may move under Fed. R. Civ. P. 12(b)(1) to dismiss
a complaint for lack of jurisdiction. Because federal courts are
courts of limited jurisdiction, the party seeking to invoke the
court's jurisdiction bears the burden of proving the existence
of subject matter jurisdiction. See Kokkonen v. Guardian Life
Ins. Co., 511 U.S. 375, 377 (1944).

## IV. DISCUSSION

The Court will examine each of the three Defendant's Motion
to Dismiss separately below:

### A. Defendant District

Defendant District asserts that under Fed. R. Civ. P.
12(b)(1) this matter should be dismissed for lack of subject
matter jurisdiction under the Eleventh Amendment's sovereign
immunity doctrine. (Def. MSJ 5.) Plaintiffs counter that while
the District may be operated by the State of New Jersey, it is
not actually a "real party in interest." (Pl. Opp. 5.) The Court
agrees with Defendant District and finds the District is a state

10

entity entitled to Eleventh Amendment immunity because of the
nature of its status under full State take-over.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be
> construed to extend to any suit in law or equity, commenced
> or prosecuted against one of the United States by Citizens
> of another State, or by Citizens or Subjects of any Foreign
> State.

U.S. Const. amend. XI.

This doctrine of sovereign immunity is not limited to the
State itself, but rather extends to state agencies and state
officers who act on behalf of the State. Rouse v. New Jersey
Dept. of Health and Human Resources, No. 15-1511, 2015 WL
5996324, at *2 (D.N.J. October 13, 2015) (citing Regents of the
Univ. of Cal. V. Doe, 519 U.S. 425, 239 (1997)). Notably,
Eleventh Amendment immunity does not extend to municipalities
unless the state is a "real party-in-interest." Chisholm, 275
F.3d at 322; Ford Motor Co. v. Dept. of Treasury of Indiana, 323
U.S. 459, 464 (1945); see also Blake v. Kline, 612 F.2d 718 (3d
Cir. 1979) (recognizing that for a federal court to be
jurisdictionally barred from entertaining a suit under the
Eleventh Amendment, it is not necessary that the State be named
as a party but only that the named part is, in actuality, the
alter ego of the State.). An action will be barred by the
Eleventh Amendment even though a state is not a party if the
action, in essence, seeks recovery from the state. Id. The

11

parties named in the suit are not determinative as to whether or not the State is a party; rather, the question is whether the State is made responsible by the suit. Chisolm v. McManimon, 275 F.3d 315, 322 (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 468, 60 (1978); Ford Motor, 323 U.S. at 464). The party asserting Eleventh Amendment immunity, in this case the Defendant District, bears the burden of proving it enjoys such immunity in the context of the specific facts at hand. Christy v. Pa. Turnpike Comm'n., 54 F.3d 1140, 1144 (3d Cir. 1995).

The entity formally being sued in this matter is the State Operated School District of the City of Camden. Generally, school boards are not considered to be state agencies and are therefore not entitled to Eleventh Amendment immunity. See Camden Cty. Recovery Coalition v. Camden City Bd. of Educ. For Public Sch. System, 262 F. Supp. 2d 446, 448 (D.N.J. 2003); see also Geis v. Bd. of Educ. of Parsippany-Troy Hills, Morris County, 774 F.2d 575, 580 (3d Cir. 1985). Yet the Court finds that in this instance the State is the "real party in interest" given the State's full take-over of the School District.

In determining whether an entity is an arm of the state, and therefore entitled to Eleventh Amendment immunity, the Third Circuit directs this Court to consider the following three factors (the "Fitchik factors"): (1) the source of the entity's

12

funding, meaning whether payment of a judgment resulting from
the suit would come from the state treasury; (2) the status of
the entity under state law; and (3) the entity's degree of
autonomy. Chisolm, 275 F.3d at 323; Fitchik v. N.J. Transit Rail
Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989); Camden Cty.
Recovery Coalition, 262 F. Supp. 2d at 449. Each of the three
factors is relevant in assessing whether an entity warrants
Eleventh Amendment protection, but none is predominant. Cooper
v. Southeastern PA Transp. Authority, 548 F.3d 296, 299 (3d Cir.
2008); Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 239
(3d Cir. 2005).

On balance, the Fitchik factors weigh in favor of Defendant
District's contention that it is an arm of the state and
therefore entitled to immunity.

In considering the first factor, the source of funding for
a judgment, the District Court's analysis on a motion to dismiss
on sovereign immunity grounds in Camden Cty. Recovery Coalition,
262 F. Supp. 2d at 449, is particularly instructive. There, the
court noted that the vast majority of the funding for Camden
city schools comes from the State of New Jersey, detailing that
because the tax base in the City of Camden is so low, at least
85% of the School Board's funding comes from state sources. Id.
The court concluded that because "there is no question that the
vast majority of the School Board's funding is from state

13

sources . . . any judgement against the School Board will lead
to the direct expenditure of state funds in order to comply with
such a judgment." Id. In the case at hand, the Defendant
District is under even more state control: it is a district
under full state intervention with a budget controlled by the
State district superintendent. N.J.S.A. 18A:7A-50.

The second Fitchik factor—the status of the entity under
state law—also suggests that in light of the specific
circumstances of the State take-over, Defendant District is an
entity of the State. Generally, a New Jersey school district is
not considered an arm of the State of New Jersey because: (1)
the school district is separately incorporated, and (2) even
under full state intervention, the district remains a corporate
entity amenable to suit under its corporate name. N.J.S.A.
18A:7A-37; 18A:7A-39(b); see also Otchy v. Elizabeth Bd. of
Educ., 325 N.J. Super. 98 (N.J. App. Div. 1999) (noting that
under state law a school board is a distinct legal entity,
which, for instance can hold property in its name). Under normal
circumstances, these factors would imply that the school
district is not an arm of the state. But currently, Camden City
School District is not a typical school district as it is under
full state intervention and subject to the provisions of the
Municipal Rehabilitation and Recovery Act, N.J.S.A. 52:27BBB—1
et seq. This law gives the Commission of Education the right to

14

subject any school district monitored under 18A:7A-14, such as
Defendant District, to additional regulations. N.J.S.A.
52:27BBB-4(d).

Given that the State of New Jersey now exercises
significant control over the Camden City School District, the
second and third Fitchik factors are significantly implicated.
See Camden Cty. Recovery Coalition, 262 F. Supp. 2d at 450.
Under the terms of the statute, the Defendant District does not
make any decisions without the approval of a State actor. For
example, of the nine members of the School Board, three are
directly appointed by the Governor of New Jersey. N.J.S.A.
52:27BBB-63(h). Moreover, the Governor has unconditional veto
power over any action taken by the School Board. N.J.S.A.
52:27BBB-64(b); see also Camden Cty. Recovery Coalition, supra.
The court in Febres v. Camden Bd. of Educ., 445 F.3d 227, 231
(3d Cir. 2006) also found that the Camden School Board's status
under only *partial* State intervention under MRERA weighed in
favor of Eleventh Amendment immunity

In sum, this Court finds that the Defendant District is an
arm of the State and enjoys Eleventh Amendment sovereign
immunity from suit in federal court. Accordingly, the Court must
dismiss all § 1983 claims (Counts I, II, III, IV, V, VI, VII,
VIII, IX) as to Defendant District, leaving only Plaintiffs'
claims under state law remaining. Under the Eleventh Amendment,

a federal court may not exercise pendent jurisdiction over state
law claims against a state entity or state officials, regardless
of the kind of relief sought by plaintiffs. Pennhurst State Sch.
and Hosp. v. Halderman, 465 U.S. 89, 106 (1984); see also Camden
Cty. Recovery Coalition, 262 F. Supp. 2d at 452. Therefore,
since the Camden School District is considered an arm of the
state in the instant case, the remaining state law claims
against Defendant School District will be dismissed as well and
Defendant District's Motion to Dismiss is granted in full.

**B. Defendant Rouhanifard**

All claims against Defendant Rouhanifard are similarly
barred based on Eleventh Amendment sovereign immunity principles
because he is a state official sued in his official capacity.
Sovereign immunity principles expand to protect not only states,
but also state officials when "the state is the real,
substantial party in interest." Ford Motor Co. v. Dep't of
Treasury, 323 U.S. 459, 464 (1945). "[A] suit against a state
official in his or her official capacity is not a suit against
the official but rather is a suit against the official's office
. . . As such, it is no different from a suit against the State
itself. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71
(1989).

In applying the three Fitchik factors used to determine
whether an entity or official is an "arm of the state" (state

16

treasury liability, status under state law, and degree of
autonomy) the Court concludes that Defendant Rouhanifard was
indeed a state agent acting in his official capacity, and thus
enjoys immunity derivative from the State's Eleventh Amendment
protections. New Jersey law itself delineates that for purposes
of the New Jersey Torts Claims Act ("TCA"), "the State district
superintendent shall be considered a State officer." N.J.S.A.
18A:7A-35(b). The TCA's purpose was to re-establish immunity of
all governmental bodies in New Jersey in order to protect
against costly litigation for unforeseen public situations. See
N.J.S.A. 59:2-1, cmt.(a). By identifying the State district
superintendent as an officer of the State, the Legislature
clearly meant to extend the State's sovereign immunity
protections to Defendant Rouhanifard. Moreover, the
legislature's decision to make the State district superintendent
an office of the State shows that like all State officials
subject to suit, the payment of a judgment against the
superintendent would inevitably come from the state treasury,
implicating the first Fitchik factor in favor of extending
immunity to Defendant Rouhanifard.

Finally, the Court is persuaded that New Jersey law
supports Defendant Rouhanifard's argument that the State
district superintendent is so intertwined with the role of the
State Commissioner of Education, that the superintendent

17

experiences very little, if any, autonomy—the third Fitchik factor. The State District Superintendent is appointed by the Department of Education, N.J.S.A 18A:7A-35, -46, and though it enjoys broad powers, its actions are all subject to the approval of the Commissioner. See N.J.S.A. 18A:7A-35(d) ("The State district superintendent shall perform such duties and possess such powers as deemed appropriate by the commissioner."); N.J.S.A 18A:7A:35(e) ("the State district superintendent shall have the power to perform all acts and do all things that the commissioner deems necessary for the proper conduct, maintenance and supervision of the schools in the district."); N.J.S.A. 18A:7A-42(2)-(3) ("subject to the approval of the commissioner" the State district superintendent can make all personnel determinations.") Moreover, as Defendant Rouhanifard remarked in his opposition brief (Def. Rouhanifard Opp. at 9) it is significant that the State district superintendent's salary is "fixed by the commissioner and adjusted from time to time as the commissioner deems appropriate." N.J.S.A. 18A:7A-35(b), and that the Commissioner can terminate the superintendent's services. N.J.S.A. 18A:7A:35(b). As such, the third Fitchik factor, an officer's degree of autonomy from the State, favors granting immunity for Defendant Rouhanifard.

Plaintiffs deny that Defendant Rouhanifard is a State agent, arguing that he is really a District employee and thus

not an arm of the state. (Pl. Opp. 9-11.) Yet Plaintiffs fail to

provide "sufficient factual matter" in either their Complaint or

Opposition Brief to support their repeated argument that

Defendant Rouhanifard is a District employee. Their assertion

that "any Eleventh Amendment immunity accorded to Defendant

Rouhanifard must be derivate from the District-entity," (Pl.

Opp. 10) is incorrect as a legal conclusion and insufficiently

supported as a factual allegation. Plaintiffs ignore the weight

of the Fitchik factors in favor of immunity and contrary to

Plaintiffs' repeated assertions, the law is clear that a suit

against Defendant Rouhanifard in his official capacity can be a

suit against the state, *even if* the Court had determined that

the District was not an arm of the state. Plaintiffs have failed

to allege more than conclusory legal allegations to counter the

overwhelming weight of the Fitchik factors favoring a State

district superintendent's status as an agent of the State when a

school district is under full state intervention. Gibson v. N.J.

Dep't of Law & Pub. Safety-Division, 411 F.3d 427, 431 (3d Cir.

2005) (The Court need not give credence to Plaintiffs' "bald

assertions" or "legal conclusions.").

Moreover, Plaintiffs erroneously suggest that the State

must be a named defendant in order to extend its Eleventh

Amendment immunity to state officials.[1] It has been clearly established that a "real party-in-interest" extends beyond simply the named parties to a suit. See Fitchik, 873 F.2d at 659 ("A suit may be barred by the Eleventh Amendment even though a state is not named a party to the action, as long as the state is the real party in interest."); Edelman v. Jordan, 416 U.S. 651, 663 (1974) (same).

In sum, each of the Fitchik factors weighs in favor of finding that Defendant Rouhanifard is an arm of the state and therefore entitled to Eleventh Amendment sovereign immunity. Plaintiffs have failed to allege any facts to the contrary. Accordingly, the Court will grant Defendant Rouhanifard's Motion to Dismiss on all claims based on this Court's lack of subject matter jurisdiction. Just as was the case with Defendant District, the Court must also dismiss all remaining state law claims against Defendant Rouhanifard. See Pennhurst, 465 U.S. 89, 106 (1984).

---

[1] In their Opposition Brief, Plaintiffs argue that Defendant Rouhanifard's reliance on Wright v. N.J. Dep't of Educ., 115 F. Supp. 3d 490, 498 (D.N.J. 2015) is "irrelevant to this matter because, there, the State of New Jersey as well as the New Jersey Department of Education, which had previously been found an arm of the State for Eleventh Amendment purposes, were specific defendants." (Pl. Opp. 11.)

## C. **Defendant Gilbert**

In moving to dismiss, Defendant Gilbert asserts that she is entitled to qualified immunity because Plaintiffs' Complaint fails to allege a violation of a federal constitutional right. A defendant's entitlement to qualified immunity hinges on two considerations. First, "whether the plaintiff has alleged a deprivation of a constitutional right at all." Barker v. Keezer, No. 08-1487, 2010 WL 2760728, at *2 (D.N.J. July 8, 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 230 (2009)). And second, "whether the right that was allegedly violated was clearly established, or, in other words, whether it would be clear to a reasonable [government official] that his conduct was unlawful in the situation he confronted." Id. (quoting Curley v. Klem, 449 F.3d 199, 207 (2007). This inquiry "must be undertaken in light of the specific context of the case, not as a broad, general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citation omitted). "The focus of qualified immunity is the 'objective legal reasonableness' of the actions taken by the public official." McCullough v. City of Atlantic City, 137 F. Supp. 2d 557, 572 (D.N.J. 2001) (citing Creighton, 483 U.S. at 639).

The Court is persuaded that, based on the first consideration regarding whether Plaintiffs have alleged any deprivation of a constitutional right, that Defendant Gilbert is

entitled to qualified immunity. While Plaintiffs may indeed have
a protected property right in continued employment, they
relinquished the right when they voluntarily resigned.

An employee's voluntary resignation will typically defeat a
claim of denial of procedural due process. See Lombardi v.
Morris Cty. Sheriff's Dept., No. 04-6418, 2007 WL 1521184, at *9
(D.N.J. May 22, 2007) (citing Leheny v. City of Pittsburgh, 183
F.3d 220, 227 (3d Cir. 1999) ("If a plaintiff retires or resigns
. . . the court must next focus on whether plaintiff
retired/resigned voluntarily or was constructively
discharged.")). Defendant Gilbert argues that by voluntarily
resigning, Plaintiffs relinquished their property interest in
continued employment and therefore cannot establish a
constitutional deprivation within the meaning of the Due Process
clause. (Def. Gilbert MTD 12); Boody, 997 F. Supp. at 570; see
also Hargray v. City of Hallandale, 57 F.3d 1560, 1567 (11th
Cir. 1995). Plaintiffs counter that their resignations were not
voluntary because they were obtained by a "misrepresentation"
that Defendant Gilbert was "validly authorized and appropriately
certified" to conduct their evaluations. (Cl ¶ 109.) As such,
Plaintiffs assert they retained their due process rights under
the Fourteenth Amendment. (Pl. Opp. 24-25, 29-30.)

The Court thus focuses its analysis determining whether
Plaintiffs have alleged sufficient facts to support a plausible

22

conclusion that they were constructively discharged because of the alleged misrepresentation of Defendant Gilbert's credentials despite their resignations.

The general presumption is that employee resignations are voluntary. Boody, 997 F. Supp. at 570. "This presumption will prevail unless [the employee] comes forward with sufficient evidence to establish that the resignation was involuntarily extracted." Christie v. United States, 518 F.2d 584, 587 (1975). The Third Circuit has established two circumstances in which an employee's resignation or retirement will be deemed involuntary for due process purposes: (1) when the employer forces the resignation by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee. Rusnak v. Williams, 44 Fed. Appx. 555, 558 (3d Cir. 2002) (citing Leheny, 183 F.3d at 228). Under the misrepresentation theory, a court may find a resignation to be involuntary if induced by reasonable reliance on an employer's misrepresentation of a material fact concerning the resignation.

The Court finds that Plaintiffs cannot plausibly allege that there was a material misrepresentation, or even a misrepresentation at all. Plaintiffs' assertion that Defendant Gilbert was required to hold a provisional Administrator license

is based on a now repealed statute.[2] New Jersey has repeatedly asserted that "in this State it is the general rule that where a statute is repealed and there is no saving[s] clause or a general statute limiting the effect of the repeal, the repealed statute, in regard to its operative effect, is considered as though it had never existed . . . ." Kemp by Wright v. State, Cty. of Burlington, 147 N.J. 294, 211 (1997) (quoting Parsippany Hills Assocs. v. Rent Leveling Bd., 194 N.J. Super. 34, 42 (App. Div.), cert denied, 97 N.J. 643 (1984). This Court therefore finds that because the administrative code section that Plaintiffs allegedly relied upon in deciding to resign, subchapter 6, has been repealed and "considered as though it had never existed," Plaintiffs cannot argue that there was a material misrepresentation regarding Defendant Gilbert's

---

[2] In their Complaint, Plaintiffs allege that to evaluate their performance, Defendant Gilbert was required to hold a provisional Administrator certificate pursuant to N.J.A.C. 6A:9B-12.4 and N.J.S.A. 18A:26-2. (Cl. ¶¶ 26, 33-36, 169-72.) After Defendant Rouhanifard's Moving brief (see Def. Rouhanifard Reply at 1) pointed out that neither statute supported the position that Defendant Gilbert was required to have the aforementioned credentials, Plaintiffs conceded that the actual authority they rely upon is a different subchapter: N.J.A.C. 6A:9-6.4(c). (See Pl. Opp. 16, fn. 3.) This code section was repealed without a savings clause. When Ch. 9, Professional Licensure and Standards, was recodified by administrative change effective August 4, 2014, former Subchapter 6, Types of Certificates, was recodified as Subchapter 6 of N.J.A.C. 6A:9B. See N.J.A.C. 6A:9, Chapter Historical Note. Subsequently, Ch. 9B was readopted effective November 12, 2015 and as part of the readoption, the "former Subchapter 6, Types of Certificates, was repealed." N.J.A.C. 6A:9B, Chapter Historical Note.

24

credentials. Id. Thus, because Plaintiffs' resignations were not obtained through a misrepresentation regarding Defendant Gilbert's credentials, Plaintiffs' resignations must be deemed voluntary. Accordingly, Plaintiffs were not deprived due process and have not alleged a constitutional deprivation. Defendant Gilbert is therefore entitled to qualified immunity.

D. **Remaining State and Common Law Claims; Supplemental Jurisdiction**

The Court has determined that it must dismiss all of Plaintiffs' federal claims, leaving only claims under state and common law remaining.

This Court may decline to exercise supplemental jurisdiction over the remaining state law claims where the court has determined all claims over which it had original jurisdiction. See 28 U.S.C. § 1367(c)(3). Thus, where federal question claims are dismissed on motion at an early stage of the case, the District Court will generally dismiss the remaining related claims by declining supplemental jurisdiction under Section 1367(c)(3). Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009); Freund v. Florio, 795 F. Supp. 702, 710 (D.N.J. 1992). Principles of judicial economy, convenience and fairness to the litigants all suggest that this Court should not retain supplemental jurisdiction over the claims arising at state law at this early stage of the case.

25

Since the Court lacks subject matter jurisdiction over Defendants District and Rouhanifard, and because it dismisses the federal claim against Defendant Gilbert on qualified immunity grounds, the Court will also dismiss the remaining state law claims. 28 U.S.C. § 1367(c)(3); see Pennhurst, 465 U.S. at 106 (dismissing pendent state law claims when finding Eleventh Amendment immunity in a case); see also United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("[c]ertainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). The Plaintiffs can pursue their state law claims, but not in federal court.

**V. CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss are granted and Plaintiffs' claims are hereby dismissed. An appropriate Order follows.


**November 10, 2016**           **s/ Jerome B. Simandle**
Date                             JEROME B. SIMANDLE
                                 Chief U.S. District Judge